UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARRESSA SMITH as Administratrix and prosequendum of the estate of Kashon Smith, a minor, deceased, and CORINTHIA MITCHELL as parent and natural guardian for Kaysha Mitchell, a minor, and Coron Mitchell, a minor<br><br>          Plaintiffs,<br><br>     v.<br><br>OFFICER DEAN GRANDSEN, et al.,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-4517<br>        (JEI/KMW)<br><br><br>**OPINION** |

**APPEARANCES:**

RALPH A. POWERLL, ESQUIRE PC
Ralph A. Powell, Esq.
1900 Knight Circle
Yardley, PA 19067
     Counsel for Plaintiffs

Ralph Raymond Kramer, Esq.
605 White Horse Pike
Haddon Heights, NJ 08035
     Counsel for Defendant Officer Dean Grandsen

WEIR & PARTNERS LLP
John C. Eastlack, Jr., Esq.
The Liberty View Building
457 Haddonfield Road, Suite 310
Cherry Hill, NJ 08002
     Counsel for Defendant City of Camden

OFFICE OF CAMDEN COUNTY COUNSEL
Howard Lane Goldbery
520 Market Street
Courthouse - 14th Floor

1

Camden, NJ 08102
    Counsel for Defendants County of Camden and Camden County Prosecutor's Office

TAYLOR AND JAY, LLC
Stuart W. Jay
20 East Centre Street
Woodbury, NJ 08096
    Counsel for Defendant Jeffrey Frampton

**IRENAS**, Senior District Judge:

This matter comes before the Court on Defendant Jeffrey Frampton's Motion for Summary Judgment.[1] (Dkt. No. 56)  For the following reasons the Motion will be denied.

**I.**

There are several witnesses to the events that gave rise to this lawsuit; however, there are two distinctly different accounts of those events.  For the purposes of this Motion, the Court must resolve all factual discrepancies in favor of the Plaintiffs.[2]

On the night of December 21, 2007, Officer Dean Grandsen was a Camden City Police Officer on patrol near the 200 block of Pfeiffer Street in Camden, New Jersey.  (Pl.'s Br. Opp. Grandsen's Sum. J. Mot., Dkt. No. 64 at 1)  At around 10:30 PM,

---

[1] This is the second of three summary judgment motions.

[2] In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

Grandsen observed Kashon Smith, and his cousin, Kaysha Mitchell, crossing the street towards the side yard of the home located at 200 Pfeiffer Street. (*Id.* at 3) By cutting through the side yard, the two could arrive at a friend's house located at 2114 Jones Street. (*Id.* at 11) Smith, aged sixteen, was carrying a grill fork, appeared heavily intoxicated and was visibly upset over what was later discovered to be romantic complications. (*Id.* at 4)

Once Smith and Mitchell had reached the side yard, Grandsen exited his vehicle, drew his duty weapon and engaged Smith. (*Id.* at 5) Grandsen ordered Smith to drop the grill fork several times. (*Id.*) Although Smith did not drop the fork as instructed, Smith was not abusive or aggressive. (*Id.*) Witnesses located on the porch of 200 Pfeiffer pleaded with Grandsen not to shoot Smith. (*Id.*) They evidently did not think Smith was a danger. (*Id.*) At this point, Grandsen was approximately nineteen feet from where Smith stood. (*Id.*)

After repeating the order to drop the fork two to three times, Grandsen shot Smith on the right-hand side of his torso. (*Id.*) Upon impact, Smith grabbed his torso and dropped the fork. (*Id.* at 7) Smith was still nineteen feet from Grandsen. Grandsen again shot Smith in the torso at which point Smith collapsed face-down in a mulch bed. (*Id.*) Grandsen approached the bleeding Smith, handcuffed him and left Smith face-down in

3

the mulch bed. (*Id.* at 8)

At approximately 10:35 PM and shortly after the shooting, supervising officer Defendant Jeffrey Frampton arrived on the scene. (Pl.'s Br. Opp. Frampton's Sum. J. Mot., Dkt. No. 65 at 2) Frampton ordered Officer Wright, the only other officer present, to drive Grandsen to the hospital. (*Id.* at 3) Although Frampton observed that Smith was handcuffed face-down and in need of medical attention, Frampton waited ten more minutes to call the paramedics and left Smith unattended. (*Id.*) Both handcuffing Smith face-down and leaving him unattended were violations of police protocol. (*Id.*) Frampton did not examine Smith to determine the severity of the situation. (*Id.* at 10) No officer administered first aid to Smith or repositioned Smith face-up. (*Id.* at 4)

Kaysha and Coron Mitchell, cousins to Smith aged sixteen and nine respectively, witnessed the entire episode in horror. (*Id.* at 28) They saw Grandsen shoot Smith and about twenty-five to thirty officers who eventually arrived at the scene do nothing while Smith lay handcuffed face-down in the mulch. (*Id.*)

At 10:51 PM, approximately sixteen minutes after Grandsen shot Smith, the Basic Life Support Team ("BLST") arrived. (*Id.* at 4)) BLST Marilyn Rodriguez noted that Smith was unconscious and mulch was "preventing [Smith] from having a clear or patent airway." (*Id.*, Ex. 13 at 25) Despite requests from the

4

paramedics, police officers at the scene refused to remove Smith's handcuffs to facilitate medical treatment.

On the way to the hospital, no police officer accompanied Smith in the ambulance pursuant to police protocol. (*Id.* at 6) As a result, the paramedics could not remove Smith's handcuffs to administer IV fluids. (*Id.*) Had a police officer accompanied Smith in the ambulance, Smith could have been handcuffed to the railing of the stretcher without compromising security. (*Id.* at 7) Smith could then have received potentially lifesaving IV fluids. (*Id.*)

At 10:55 PM, Smith arrived at Cooper University Hospital. At this point, the trauma surgeon demanded that the handcuffs be removed, which took an additional twenty minutes. (*Id.*, Ex. 20 at 2) Smith did not receive IV fluids until 11:20 PM. At 12:04 AM, Smith passed away. According to Dr. David Flash, Smith's chances of survival were "markedly reduced by his being face down with debris in his mouth thus drastically interfering with his respiratory efforts, and by the lack of any fluid resuscitation until he arrived at the hospital." (*Id.*, Ex. 20 at 3) Dr. Flash further opined, "[h]ad Mr. Smith not had his airway obstructed and had been given earlier intravenous fluids, there was a possibility of survival." (*Id.*)

**II.**

5

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

In the Complaint, Plaintiffs allege three counts against Frampton. First, Plaintiffs allege a violation of 42 U.S.C. §

6

1983 for deliberate indifference. Second, Plaintiffs allege state law claims for wrongful death and survivorship. N.J.S.A. 2A:31.1 *et seq.*; N.J.S.A. § 2A:15-3. Third, Plaintiffs Kaysha and Coron Mitchell allege negligent infliction of emotional distress. Frampton moves for summary judgment on all three counts.

**A.**

With regard to the deliberate indifference claim, Defendant argues qualified immunity.[3] Qualified immunity entails a two-part inquiry. First, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). Second, defendants may nevertheless "be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 739.

Deliberate indifference to medical claims of pretrial state detainees are analyzed under the Due Process Clause of the

---

[3] Frampton also raises for the first time in his reply brief an Eleventh Amendment defense to claims brought against Frampton in his official capacity. That argument must be disregarded because it was not timely raised. *See TriState HVAC, LLP v. Big Belly Solar, Inc.*, 752 F.Supp.2d 517, 529 (E.D.Pa. 2010). The Court notes, however, that there is no argument that the claims brought against Frampton in his personal capacity could not proceed.

Fourteenth Amendment.  In the Third Circuit, pretrial detainees are afforded at least as much protection as deliberate indifference claims of prisoners under the Eighth Amendment. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 n.5 (3d Cir. 2003) ("[T]he Due Process Clause provides at a minimum, no less protection than is provided by the Eighth Amendment.").  Therefore, if plaintiff can establish a deliberate indifference claim under the Eighth Amendment, the Court need not address the extent of any additional protection a pretrial detainee is due.

Under the Eighth Amendment, a plaintiff must show: "1) a serious medical need, 2) acts or omissions by . . . officials that indicate deliberate indifference to that need."[4]  *Natale*, 318 F.3d at 582; *accord Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  Under § 1983, plaintiff cannot rely on a theory of respondeat superior.  Instead, plaintiffs must show personal involvement by "alleging personal direction, actual knowledge, or acquiescence."  *See Askew v. Jones*, 160 Fed.Appx. 140, 142 (3d Cir. 2005).

---

[4] In *Hubbard v. Taylor*, 399 F.3d 150, 159 (3d Cir.), the Court analyzed the plaintiffs' allegations of unconstitutional pretrial detention conditions under the standard enunciated in *Bell v. Wolfish*, 441 U.S. 520 (1979).  In that line of cases the threshold issue was whether prison conditions were so poor that it amounted to pre-conviction punishment.  *Bell*, 441 U.S. at 541-43 (examining whether double bunks in a cell made to hold one prisoner constituted cruel and unusual punishment.)  By contrast, here, the claims are for police officers' deliberate indifference to the serious medical needs of a pretrial detainee.  Therefore, the *Estelle* line of cases more accurately frames the instant issue.

To survive qualified immunity, Plaintiff must establish a constitutional violation.  First, "[a] serious medical need may fairly be regarded as . . . one so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1987).  Here, Smith was shot twice, bleeding and lying face-down in mulch.  There can be little doubt that Smith's medical need was a serious one.

Second, deliberate indifference can be proven by acts or omissions.  Deliberate indifference exists when a plaintiff has a serious need for medical care and officials ignore that evidence. *See Nicini v. Morra*, 212 F.3d 798, 815 n.14 (3d Cir. 2000). Deliberate indifference has also been found when "necessary medical treatment is delayed for non-medical reasons."  *Natale*, 318 F.3d at 582 (quoting *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Here, Frampton knew Smith was shot, handcuffed and lying face-down in mulch.  Frampton did not reposition Smith face-up, nor did he administer first aid.  Frampton did not even examine or speak to Smith despite being one of the first officers on the scene.  Frampton sent uninjured Officer Grandsen to the hosptial, but waited ten minutes to call the paramedics for Smith. Furthermore, Frampton did not ride with Smith in the ambulance or direct another officer to do so.  As a result, Smith's handcuffs

were not removed and the medics could not administer IV fluids until they reached the hospital.  These omissions are violations of police protocol and evidence that a reasonable jury could conclude constituted deliberate indifference.

Having established a claim, the qualified immunity analysis must now turn to whether deliberate indifference was a clearly established constitutional violation.  The purpose of this step is to ensure that officials have adequate notice that their actions are unlawful.  *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

Cases involving deliberate indifference in prison settings date back at least thirty years.  *See Estelle*, 429 U.S. 97.  In the Third Circuit, pretrial detainees have been afforded at least the same level of rights as prisoners for over twenty years.  *See Boring v. Kozakiewicz*, 833 F.2d 468 (3d Cir. 1987).  There can be little doubt that a reasonable official should have known that deliberate indifference to the medical needs of a pretrial detainee was a constitutional violation.  Accordingly, Frampton's Motion with respect to the § 1983 deliberate indifference claim will be denied.

**B.**

With regard to Plaintiff's claims for wrongful death and survivorship under state law, Defendant argues a state law

10

corollary to qualified immunity. *See* N.J.S.A. 59:3-3. "A public employee is not liable if he acts in good faith in the execution or enforcement of any law." *Id.* Good faith can be demonstrated either by "objective reasonableness or that he behaved with subjective good faith." *Toto v. Ensuar*, 196 N.J. 134, 146 (2008) (internal quotations omitted). "[I]mmunity would be defeated if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the (plaintiff)." *Alston v. City of Camden*, 168 N.J. 170, 187 (2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The burden is on the public employee to establish good faith. *Id.*

Defendant only argues the existence of objective good faith by relying on his qualified immunity arguments. However, for the same reasons that those arguments were not persuasive in the context of qualified immunity, the arguments are unpersuasive to establish objective good faith. Specifically, Frampton knew or should have known that his actions violated Smith's due process rights. The Court will thus deny Frampton's Motion with respect to these state law claims.

## C.

Plaintiff must establish four elements in a claim for negligent infliction of emotional distress: "(1) the death or

11

serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Portee v. Jaffee*, 84 N.J. 88, 101 (1980). Frampton argues that Plaintiffs have not carried their burden under the first and fourth elements.

Under the first element, Frampton argues that Plaintiffs have failed to establish that Frampton was the proximate cause of Smith's death. Frampton argues that the Complaint specifically states that "Kashon Smith died as a result of two gunshot wounds." (Compl., Dkt. No. 25 at ¶ 104) The Court does not think this fairly characterizes Plaintiffs' allegations.

Taking the Complaint as a whole, Plaintiffs have alleged several contributing factors that caused Smith's death. For example, Plaintiffs have alleged that police officers refused to remove Smith's handcuffs to receive medical treatment. (*See id.* at ¶ 103) Plaintiffs further allege that police officers knew that Smith was lying face-down in mulch, which caused Smith to lose consciousness.[5] (*See id.* at ¶ 99) Furthermore, Dr. Flash opined that Smith's chances were markedly reduced due to events that transpired after Smith had been shot. (Pl.'s Br. Opp.

---

[5] As described *supra*, Plaintiffs have also pointed to record evidence supporting these factual allegations.

Grandsen's Sum. J. Mot., Ex. 20 at 3, Dkt. No. 64)  With regard to causation, "[i]f there was any substantial possibility of survival and the defendant has destroyed it, he is answerable." *Evers v. Dollinger*, 95 N.J. 399, 417 (1984) (quoting *Hicks v. United States*, 368 F.2d 626, 632 (4th Cir. 1966)).  Accordingly, Plaintiffs have carried their burden as to proximate cause.

Frampton also challenges whether Kaysha and Coron Mitchell suffered severe emotional distress.  Specifically, Frampton argues that each Plaintiff only saw mental health counselors for a short period of time and that there is no objective evidence of severe emotional distress.

Severe emotional distress is an amorphous concept with no rigid boundaries.  Indeed, the first three elements to the cause of action already substantially limit the types of harm to which recovery is permissible.  "The harm we have determined to be worthy of judicial redress is the trauma accompanying the observation of the death or serious physical injury of a loved one."  *Portree*, 84 N.J. at 100.  The concept is "to protect a plaintiff's basic emotional stability."  *Id.*  Psychological treatment is not necessary to prove this element.  *See Ortiz v. John D. Pittenger Builder, Inc.*, 382 N.J.Super. 552, 564 (2004).

Here, Plaintiffs have presented evidence indicating some psychological treatment in addition to symptoms relating to emotional stability.  Kaysha has experienced nightmares, weight

13

loss, trouble sleeping, and feelings of guilt.  (Pl.'s Br. Opp. Grandsen's Sum. J. Mot. at 28, Dkt. No. 64)  Coron fears leaving the house and has trouble speaking of the event even to trained counselors.  (*Id.*)  A reasonable jury could find that these Plaintiffs have sustained severe emotional distress.  Therefore, Frampton's Motion for Summary Judgment on the negligent infliction of emotional distress claim will be denied.

### IV.

For the foregoing reasons Defendant Frampton's Motion for Summary Judgment is denied.

Dated: 11/3/11

                                          /s/ Joseph E. Irenas

                                          **JOSEPH E. IRENAS, S.U.S.D.J.**