UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARRESSA SMITH as Administratrix and prosequendum of the estate of Kashon Smith, a minor, deceased, and CORINTHIA MITCHELL as parent and natural guardian for Kaysha Mitchell, a minor, and Coron Mitchell, a minor<br><br>       Plaintiffs,<br><br>   v.<br><br>OFFICER DEAN GRANDSEN, et al.,<br><br>       Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-4517<br>(JEI/KMW)<br><br><br>**OPINION** |

**APPEARANCES:**

RALPH A. POWERLL, ESQUIRE PC
Ralph A. Powell, Esq.
1900 Knight Circle
Yardley, PA 19067
    Counsel for Plaintiffs

Ralph Raymond Kramer, Esq.
605 White Horse Pike
Haddon Heights, NJ 08035
    Counsel for Defendant Officer Dean Grandsen

WEIR & PARTNERS LLP
John C. Eastlack, Jr., Esq.
The Liberty View Building
457 Haddonfield Road, Suite 310
Cherry Hill, NJ 08002
    Counsel for Defendant City of Camden

OFFICE OF CAMDEN COUNTY COUNSEL
Howard Lane Goldbery
520 Market Street
Courthouse - 14th Floor

1

Camden, NJ 08102
    Counsel for Defendants County of Camden and Camden County
Prosecutor's Office

TAYLOR AND JAY, LLC
Stuart W. Jay
20 East Centre Street
Woodbury, NJ 08096
    Counsel for Defendant Jeffrey Frampton


**IRENAS**, Senior District Judge:

    This matter comes before the Court on Defendant City of Camden's Motion for Summary Judgment.[1]  (Dkt. No. 62)  For the following reasons the Motion will be granted in part and denied in part.


## I.

    There are several witnesses to the events that gave rise to this lawsuit; however, there are two distinctly different accounts of those events.  For the purposes of this Motion, the Court must resolve all factual discrepancies in favor of the Plaintiffs.[2]

    On the night of December 21, 2007, Officer Dean Grandsen was a Camden City Police Officer on patrol near the 200 block of Pfeiffer Street in Camden, New Jersey.  (Pl.'s Br. Opp.

---

[1] This is the last of three summary judgment motions in this case.

[2] In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

Grandsen's Sum. J. Mot. 1, Dkt. No. 64 )  At around 10:30 PM,
Grandsen observed Kashon Smith, and his cousin, Kaysha Mitchell,
crossing the street towards the side yard of the home located at
200 Pfeiffer Street.  (*Id.* at 3)  By cutting through the side
yard, the two could arrive at a friend's house located at 2114
Jones Street.  (*Id.* at 11)  Smith, aged sixteen, was carrying a
grill fork, appeared heavily intoxicated and was visibly upset
over what was later discovered to be romantic complications.
(*Id.* at 4)

Once Smith and Mitchell had reached the side yard, Grandsen
exited his vehicle, drew his duty weapon and engaged Smith.  (*Id.*
at 5)  Grandsen ordered Smith to drop the grill fork several
times.  (*Id.*)  Although Smith did not drop the fork as
instructed, Smith was not abusive or aggressive.  (*Id.*)
Witnesses located on the porch of 200 Pfeiffer pleaded with
Grandsen not to shoot Smith.  (*Id.*)  They evidently did not think
Smith was a danger.  (*Id.*)  At this point, Grandsen was
approximately nineteen feet from where Smith stood.  (*Id.*)

After repeating the order to drop the fork two to three
times, Grandsen shot Smith on the right-hand side of his torso.
(*Id.*)  Upon impact, Smith grabbed his torso and dropped the fork.
(*Id.* at 7)  Smith was still nineteen feet from Grandsen.
Grandsen again shot Smith in the torso at which point Smith
collapsed face-down in a mulch bed.  (*Id.*)  Grandsen approached

3

the bleeding Smith, handcuffed him and left Smith face-down in
the mulch bed.  (*Id.* at 8)

At approximately 10:35 PM and shortly after the shooting,
supervising officer Defendant Jeffrey Frampton arrived on the
scene.  (Pl.'s Br. Opp. Frampton's Sum. J. Mot. 2, Dkt. No. 65)
Frampton ordered Officer Wright, the only other officer present,
to drive Grandsen to the hospital.  (*Id.* at 3)  Although Frampton
observed that Smith was handcuffed face-down and in need of
medical attention, Frampton waited ten more minutes to call the
paramedics and left Smith unattended.  (*Id.*)  Both handcuffing
Smith face-down and leaving him unattended were violations of
police protocol.  (*Id.*)  Frampton did not examine Smith to
determine the severity of the situation.  (*Id.* at 10)  No officer
administered first aid to Smith or repositioned Smith face-up.
(*Id.* at 4)

Kaysha and Coron Mitchell, cousins to Smith aged sixteen and
nine respectively, witnessed the entire episode in horror.  (*Id.*
at 28)  They saw Grandsen shoot Smith and about twenty-five to
thirty officers who eventually arrived at the scene do nothing
while Smith laid handcuffed face-down in the mulch.  (*Id.*)

At 10:51 PM, approximately sixteen minutes after Grandsen
shot Smith, the Basic Life Support Team ("BLST") arrived.  (*Id.*
at 4))  BLST Marilyn Rodriguez noted that Smith was unconscious
and mulch was "preventing [Smith] from having a clear or patent

4

airway." (*Id.*, Ex. 13 at 25)  Despite requests from the paramedics, police officers at the scene refused to remove Smith's handcuffs to facilitate medical treatment.

On the way to the hospital, no police officer accompanied Smith in the ambulance pursuant to police protocol. (*Id.* at 6)  As a result, the paramedics could not remove Smith's handcuffs to administer IV fluids. (*Id.*)  Had a police officer accompanied Smith in the ambulance, Smith could have been handcuffed to the railing of the stretcher without compromising security. (*Id.* at 7)  Smith could then have received potentially lifesaving IV fluids. (*Id.*)

At 10:55 PM, Smith arrived at Cooper University Hospital. At this point, the trauma surgeon demanded that the handcuffs be removed, which took an additional twenty minutes. (*Id.*, Ex. 20 at 2)  Smith did not receive IV fluids until 11:20 PM.  At 12:04 AM, Smith passed away.  According to Dr. David Flash, Smith's chances of survival were "markedly reduced by his being face down with debris in his mouth thus drastically interfering with his respiratory efforts, and by the lack of any fluid resuscitation until he arrived at the hospital." (*Id.*, Ex. 20 at 3)  Dr. Flash further opined, "[h]ad Mr. Smith not had his airway obstructed and had been given earlier intravenous fluids, there was a possibility of survival." (*Id.*)

After these events, the Camden City Police Department did

not perform an internal investigation.[3]   (Pl.'s Counter-Statement of Facts at ¶ 38, Dkt. No. 70)   Nevertheless, Frampton had amassed a total of thirty-five internal investigations as a result of civilian complaints over the course of his career. (*Id.* at ¶ 42)   Although only one such complaint was sustained, several reports recommended further training and counseling. (*Id.* at ¶ 45)   Despite these recommendations, Frampton never received further training or counseling pursuant to these recommendations.[4]   (*Id.* at ¶ 46)

To date, the Camden City Police Department does not have an official policy regarding when to administer first aid to arrestees in serious medical condition.   (*Id.* at ¶ 41)   Nor has the Police Department adequately investigated or disciplined police officers for the multiple violations of police protocol that occurred on the night of Smith's demise.   (*Id.* ¶ 36) Indeed, police officers have been the subject of many civilian complaints over the years, yet rarely receive discipline in response.   (*Id.* at ¶ 42)

---

[3] Although City of Camden disputes this fact by pointing to "Internal Affairs Case No. 07-291," there is no pin cite to any investigation or report in the record.   (*See* Camden's Reply Br. at ¶ 35)

[4] City of Camden also disputes this fact.   However, the only citation is to Exhibit W - an unwieldy exhibit in excess of one hundred pages of unlabeled and unorganized training documentation.   There is no indication, though, whether any of this training was actually in response to the events in question.   Nor does City of Camden cite to a specific document within the exhibit to focus the Court's attention.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

Against the City of Camden, Plaintiffs allege three claims.

First, Plaintiffs allege a violation of 42 U.S.C. § 1983 for
deliberate indifference.  Second, Plaintiffs allege state law
claims for wrongful death and survivorship.  N.J.S.A. 2A:31-1 *et
seq.*; N.J.S.A. 2A:15-3.  Third, Plaintiffs Kaysha and Coron
Mitchell allege negligent infliction of emotional distress.  City
of Camden moves for summary judgment on all three claims in
addition to any punitive damages Plaintiffs may seek.

**A.**

With regard to the deliberate indifference claim, Defendant
City of Camden argues that Officers Frampton and Grandsen are
entitled to qualified immunity.  For the reasons set forth in two
accompanying summary judgment opinions, those arguments are
unpersuasive.  *See Smith v. Grandsen*, Civ. No. 08-4517 (D.N.J.
Oct. 15, 2011 & Nov. 3, 2011).  Therefore, the issue before the
Court is to what extent City of Camden can be held liable.

In actions brought pursuant to § 1983, "a municipality
cannot be held liable . . . on a *respondeat superior* theory."
*Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691
(1978).  Instead, Plaintiffs must show that the municipality's
own actions violated constitutional rights.  Plaintiffs must
"provide evidence that there was a relevant [municipal] policy or
custom, and that the policy caused the constitutional violation
they allege."  *Natale v. Camden County Corr. Facility*, 318 F.3d

8

575, 583-84 (3d Cir. 2003).  Plaintiffs have alleged two constitutional violations: 1) Grandsen used excessive force against Smith in violation of the Fourth Amendment, 2) Frampton and Grandsen were deliberately indifferent to Smith's serious medical needs in violation of the Due Process Clause of the Fourteenth Amendment.  *See Smith v. Grandsen*, Civ. No. 08-4517, slip ops. (D.N.J. Oct. 15, 2011 & Nov. 3, 2011).

Plaintiffs advance theories based both on municipal policy and custom in support of their deliberate indifference claim. First, Plaintiffs allege that City of Camden failed to train its officers when to administer first aid properly, which amounted to a municipal policy that caused Plaintiffs' constitutional rights to be violated.  Second, Plaintiffs allege that City of Camden had a custom with regard to inadequately investigating and disciplining misbehaving police officers.

## 1.

Plaintiffs argue that although City of Camden trained officers in the substantive knowledge of first aid, City of Camden failed to train officers when to properly administer first aid to detainees in serious medical conditional.[5]  Plaintiffs

---

[5] Although local government units and municipalities are "persons" within the meaning of § 1983 and § 1985, sheriff's departments and corrections departments are not separate legal entities from the County, and therefore cannot be independently sued for violations of § 1983 and § 1985.  *See McLaughlin v. Cnty. of Gloucester*, 2008 WL 700125, *2 (D.N.J. March 12, 2008)(dismissing § 1983 claim against sheriff's department because it is a

assert that this failure to train officers constituted a
municipal policy that caused Smith's Fourth and Fourteenth
Amendment rights to be violated.

A policy is made "when a decisionmaker possess[ing] final
authority to establish municipal policy with respect to the
action issues a final proclamation, policy or edict." *Id.* at 584
(quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481
(1986)). "In limited circumstances, a local government's
decision not to train certain employees about their legal duty to
avoid violating citizens' rights may rise to the level of an
official government policy." *Connick v. Thompson*, 131 S.Ct.
1350, 1359 (2011).

To establish the claim, policymakers must be "on actual or
constructive notice that a particular training program causes
city employees to violate citizens' constitutional rights . . .
[and] policymakers choose to retain that program." *Id.* at 1360.

Here, policymakers were on notice that constitutional
violations resulted from officers' lack of training. "[O]fficers
are under a duty to render emergency medical assistance to those
in their custody." *Rosario v. City of Union Police Dep't*, 131
Fed.Appx. 785, 790 (3d Cir. 2005). As a high-crime city, Camden

---

branch of the county); *see also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25
n.4 (3d Cir. 1997) (municipalities and police departments are treated as a
single entity under § 1983). Therefore, City of Camden is the correct party
to sue despite the Camden City Police Department having the alleged offending
policy.

City police officers frequently encounter situations in which detainees are in need of emergency medical treatment.  City of Camden's failure to have a training program to teach officers "about their legal duty to avoid violating citizens' rights" by properly rendering emergency first aid to arrestees amounts to a prohibited municipal policy.  *Id.* at 1359.

Moreover, Frampton did not merely fail to render first aid himself, but he and other police officers actively inhibited emergency medical responders from administering potentially lifesaving IV fluids.  In response to emergency personnel requests to remove Smith's handcuffs, one officer said, "the cuffs stay on.  Get him out of here."  (Pl.'s Br., Ex. 18, Rowe Dep. at 25:22-23)  But no officer accompanied Smith in the ambulance.[6]  City of Camden has not submitted evidence of officer training regarding the duty to cooperate with emergency medical personnel.

The failure to train becomes all the more stark considering more than twenty-five officers arrived on the scene yet no officer administered first aid and no officer repositioned Smith face-up to avoid positional asphyxiation.  Had officers been adequately trained, a reasonable jury could expect that at least

---

[6] Although it was an official city policy to have an officer ride in the ambulance with Smith and reposition Smith face-up while handcuffed, a reasonable jury could find that City of Camden failed to train officers to comply with the policy.

one of the officers would have administered emergency first aid or repositioned Smith face-up in accordance with that training. Although these police actions should be a matter of commonsense, Camden police officers evidently needed a training program - but did not have one - to avoid violating citizens' basic constitutional rights.  This lack of training constituted deliberate indifference to a serious medical need and may have contributed to Smith's death.  Accordingly, City of Camden's Motion will be denied due to its failure train its police officers.

### 2.

Plaintiffs further allege a deliberate indifference claim based on City of Camden's failure to adequately investigate and discipline officers, which amounted to a departmental custom of tacitly condoning police misconduct.

An act becomes a custom when, though not authorized by law or a decisionmaker, it "is so widespread as to have the force of law." *Bd. of Cnty. Com'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).  "Custom requires proof of knowledge and acquiescence by the decisionmaker." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009).  Plaintiffs also "bear the burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Beck v. City of Pittsburgh*, 89

F.3d 966, 972 n.6 (3d Cir. 1996).  Causation can be established
by showing "policymakers were aware of similar unlawful conduct
in the past, but failed to take precautions against future
violations, and that this failure, at least in part, led to their
injury." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990).

With regard to knowledge, Plaintiffs argue that Camden's
Police Chief had constructive notice as a result of 2,545
civilian complaints of misconduct filed against city police
officers between 2003 and 2009.  (Pl.'s Br. Opp. Camden's Mot.
Sum. J. Ex. 32, Dkt. No. 70)  Specifically, Frampton had been the
subject of thirty-five civilian complaints.  (*Id.* at Ex. 33)  A
reasonable jury could conclude that the Chief of Police had
constructive knowledge, if not actual knowledge, of police
misconduct from the large volume of complaints the department
received.

Plaintiffs argue acquiescence by virtue of only a small
fraction of the 2,545 complaints resulting in internal discipline
of officers.  These reports take place over the course of several
years, which suggests that the police department ignored a
longstanding problem.  In particular, only one of Frampton's
thirty-five complaints resulted in punishment - a verbal
reprimand.  (*Id.* at Ex. 33)  Moreover, Plaintiffs have pointed to
several internal investigation reports that recommended Frampton
undergo further training and counseling, yet the police

13

department ignored these recommendations. (*Id.* at Exs. 34 & 36) An inference could be made that the police department did not seriously consider internal investigation reports that recommended corrective actions to police misconduct. Therefore, a reasonable jury could conclude that City of Camden acquiesced to known police misbehavior.[7]

To establish causation, Plaintiffs argue that the obvious result of inadequate investigations and police discipline would be "a heightened inclination of police officers to use excessive force." *Brown*, 520 U.S. at 409. This Court agrees with Judge Hillman's analysis in a similar municipal custom case:

> Were a jury to credit plaintiff's proofs that the City inadequately investigated its officers' alleged use of excessive force and other constitutional violations and failed to properly supervise or discipline its officers, a reasonable fact-finder could, in turn, conclude that the City's action, or lack thereof, constituted deliberate indifference and proximately caused plaintiff's injuries.

*Merman v. City of Camden*, 2010 WL 2521422, *9 (D.N.J. 2010).

In this case, a reasonable jury could conclude that there was a departmental custom of tacitly condoning the use of excessive force and other constitutional violations. Indeed, supervising officer Frampton had a history of civilian complaints. By neglecting to address the recommendations of

---

[7] Although investigations of complaints may indicate departmental responsiveness as opposed to acquiescence, when those investigations so seldom result in discipline or when a municipality ignores recommendations stemming from those investigations, a reasonable jury could still determine that a policymaker had acquiesced to the misconduct.

internal investigations, City of Camden practically ensured that violations would reoccur.  Accordingly, City of Camden's Motion will be denied with respect to the deliberate indifference claim based on a theory of municipal custom.

### B.

City of Camden claims immunity to the survivorship and wrongful death claims under the New Jersey Torts Claims Act. N.J.S.A. 59:1-1 *et seq.*  In general, "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury."  N.J.S.A. 59:2-1a.  The very next section, however, scales that immunity back significantly: "A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."  N.J.S.A. 59:2-2a.

City of Camden attempts to characterize its actions as discretionary, subject to liability only when "palpably unreasonable."  N.J.S.A. 59:2-3d.  The statute describes discretionary acts to include "how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel."  *Id.*

Nothing in this case suggests that police officers' acts and omissions were the product of overarching departmental policy

decisions concerning the allocation of resources.  To the contrary, the facts paint a picture of police officers who twice shot a sixteen-year-old boy and left him to suffocate handcuffed in the mulch.  Those officers then failed to cooperate with emergency medical personnel who could have administered potentially lifesaving medical care.  To suggest that the law provides a more lenient standard of liability under these circumstances is wholly without merit.

City of Camden further argues that Defendants Frampton and Grandsen are entitled to New Jersey's good faith immunity.  "A public employee is not liable if he acts in good faith in the execution or enforcement of any law."  N.J.S.A. 59:3-3.  This protection is New Jersey's form of qualified immunity.  However, "good faith immunity is not available to police officers accused of negligent provision of emergency medical assistance."  *Rosario*, 131 Fed.Appx. at 790 n.2.  Here, Defendants acted negligently at best.  For this reason and those reasons stated in an accompanying summary judgment opinion, Defendants are not entitled to good faith immunity.  *See Smith v. Grandsen*, Civ. No. 08-4517, slip op. at 7-11 (D.N.J. Nov. 3, 2011).  Accordingly, City of Camden's Motion with regard to the wrongful death and survivorship claims will be denied.

C.

16

With regard to the claim for negligent infliction of
emotional distress, City of Camden argues that Plaintiffs have
not alleged sufficient damages.  Except in cases of death or
permanent disfigurement with treatment in excess of $3,600, "[n]o
damages shall be awarded against a public entity or public
employee for pain and suffering."  N.J.S.A. 59:9-2d.  Plaintiffs
concede they do not satisfy the amount in controversy requirement
of the statute.[8]  Accordingly, City of Camden's Motion regarding
the negligent infliction of emotional distress claim will be
granted.

### D.

Defendant argues that the New Jersey Tort Claims Act
prohibits the award of punitive damages against a public entity.
"No punitive or exemplary damages shall be awarded against the
public entity."  N.J.S.A. 59:9-2c.  Plaintiffs do not respond to
this argument.[9]  Although City of Camden makes no argument with

---

[8] Defendants Frampton and Grandsen did not raise this argument in their
Motions for Summary Judgment.  Although the defense may apply equally to those
Defendants, "[i]f Plaintiffs prove to a jury that [Defendants] acted outside
the scope of [their] employment or with actual malice or willful misconduct,
then they will be entitled to seek pain and suffering damages without regard
to the restrictions in [N.J.S.A. 59:9-2d]."  *Ward v. Barnes*, 545 F.Supp.2d
400, 418 (D.N.J. 2008).  Considering Plaintiffs allege punitive damages
against Grandsen and Frampton, which requires a similar standard, the Court
will not construe this concession as a voluntary dismissal of this claim
against all Defendants.  The Court will only dismiss the negligent infliction
of emotional distress claim with respect to City of Camden.

[9] It is unclear whether Plaintiffs even demand punitive damages from
City of Camden.  Counts I and II of the Complaint, alleged only against
Grandsen and Frampton, clearly demand punitive damages.  However, Counts III-

respect to the § 1983 claim, the law is clear "that a municipality is immune from punitive damages under 42 U.S.C. §1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, the Motion for Summary Judgment with respect to punitive damages against City of Camden will be granted.[10]

## IV.

For the foregoing reasons, City of Camden's Motion will be granted in part and denied in part. City of Camden's Motion will be granted with respect to Plaintiffs' claims for negligent infliction of emotional distress and punitive damages. City of Camden's Motion will be denied as to Plaintiffs' claims for deliberate indifference, wrongful death and survivorship.

Dated: 11/14/11

                                    /s/ Joseph E. Irenas

                              **JOSEPH E. IRENAS, S.U.S.D.J.**

---

V, which are directed against City of Camden, do not explicitly demand punitive damages. Although those Counts do include the stock phrase that "incorporates by reference the allegations contained" in prior Counts, the prayer for relief conspicuously omits reference to punitive damages. (*See* Am. Compl., Dkt. No. 25)

[10] City of Camden also argues that Defendants did not establish by clear and convincing evidence that Defendants acted with actual malice or wanton and willful disregard. N.J.S.A. 2A:15-5.12a. The Court need not reach this argument.